Case number 14-7048 at L. Enri Debra M. Stevenson, Eugene Smith and Debra M. Stevenson Appellants versus First American Title Insurance Company at L. Mr. Smith for the appellants, Mr. Steadman for the appellees. Good morning. Good morning. Eugene Smith, pro se on behalf of the appellants. Your honors, this case may be viewed as a remnant of the recent financial crisis. However, this case comes down to fundamental issues of law. Summary judgment in favor of the plaintiffs should not be granted here for several reasons. First reason, standing issues. Second reason, equitable subrogation does not apply in this case. And third, the defenses that were raised below are not affirmative defenses, but rather statutes designed to protect the public, which may not be waived. With respect to standing issue, this case was brought by First American Insurance Company in 2007. Nowhere in the pleadings did the insurance company indicate an injury in fact, which is required by the Supreme Court case in Lujan. You're required to meet two factors, constitutional standing as well as prudential standing. The other plaintiffs weren't joined in the case until 2008. So this case proceeded only with First American. Nowhere in the pleadings did they allege an injury in fact. There's no evidence of an injury in fact. In fact, this court has held in Span v. Colonial that litigation costs may not be considered as a factor in determining an injury in fact. In 2008, the other plaintiffs were allowed to join the case. They never presented a note, the Fremont note in this case. All notes that were presented prior to the sudden appearance of the note in October 2008 did not bear any endorsement, either specially or in blank. Given that the First American did not meet the standards of constitutional standing, the case should have ended there. They should not have been allowed to substitute in other parties to create jurisdiction for this court. If we do get to the next issue, your point there is that you didn't sign the key document. Exactly, Your Honor. My mother asked me to attend the settlement for the refinance. I looked over the papers. I decided that this was not a good idea. So I tried to persuade my mom, but she was persuaded by the mortgage broker at the time that this was a good idea. She would be able to refinance at a lower rate later. I decided that I didn't want any part in this. I'm a joint tenant on the property. I decided to leave since my mother regrettably didn't listen to me at the time. I did not sign any of the documents. The court acknowledged that Fremont knew at the time that I did not intend to transfer my interest in the property. I did not intend to sign any of the documents, yet still they went through with the refinance. And years, almost a year later, they approached me to say that you need to sign these documents. I said, I'm not signing these documents. The point with respect to equitable subrogation, the plaintiffs wish to apply the doctrine in a way that's never been applied before. The doctrine is typically applied in the context of a refinance when there are competing liens on the property. Here, there's no competing liens on the property. Even the cases that the plaintiffs rely on indicate that the doctrine should not be applied in those instances where there's no competing liens. In Eastern's case, they pointed out that the plaintiffs rely on the restatement of the property, which the plaintiffs rely on. In comment A there, it says that the doctrine does not apply in instances where there's no competing liens. Should it be the case that they're usually leaning on half the value of the property now, or none at all? It should be the case. Your mother did sign the documents, even though you did not, right? I'm sorry? Your mother did sign the documents, right? My mother did sign the documents, Your Honor. We would argue that, you know, based on our defenses, one of which is that the loan was illegal from the beginning. Forget about that for a moment, as far as the state of the title. Assume that you fail on that defense. Should there be a lien on half the value of the property, or no lien? I think that no lien on the property. Why would there not be a lien valid as against your mother's interest? Your Honor, if, you know, assuming that our defenses aren't appropriate in this case, then, you know, there possibly should be a lien on one half of the interest. But I don't think that that's the doctrine of equitable disobligation. Your Honor, furthermore, the plaintiffs are requesting that the court ignore longstanding law in the District of Columbia. The Bankruptcy Court noted that neither Eastern Savings Bank nor Burgoon applied or decided the issue of what should happen in the District of Columbia. In the case of actual knowledge, that is not disputed here. When there is an issue of common law that's undecided, the District of Columbia usually looks to Maryland for it. Usually, but not always, and there's case law that says they would look to the restatement here, right? If they look to the restatement here, you lose on this point. Yes, Your Honor. So how are we supposed to decide whether we should look to the common law of Maryland or the restatement? How are we to know which to do? Well, the case law in D.C. in Johnson v. Fairfax, the court stated in a long history, long line of cases, that D.C. isn't required, but they said that special consideration should be given to Maryland law. Here, even if you would decide to, you know, assuming that you were persuaded that the restatement would apply, which is not the majority approach when dealing with actual knowledge, even in the... But the D.C. Court of Appeals has looked to the restatement before. Right. And in this case, that's what we're supposed to imagine what they would be doing, right? Exactly. The court did look to the restatement in the Eastern Savings Bank case, but, you know, the court said that that issue, you know, whether actual knowledge would bar the application of the doctrine, wouldn't be decided here. No, that's right. That wouldn't be decided. But isn't it instructive that they look to the restatement? I mean, I think that, you know, there are three considerations, and one of them is the restatement that the D.C. Court could look at. Even assuming that the court was to look at that, again, back to what the restatement says, is that when there is no competing lien, then the doctrine should apply. Even the case that the plaintiffs cite in Bank of America v. Preston, you know, they look to the Washington Supreme Court. Even the Washington Supreme Court in Ken V. Lee stated that when there's a negligent insurance company involved, that the doctrine would not apply. Here we have an insurance company trying to, you know, neglect their contractual obligations here and ask the court to apply the doctrine in a way that would be unprecedented. I don't remember you asking for rebuttal time, but I bet you you want some. Two minutes, yes. Okay, so we'll give you back two minutes for rebuttal. Good morning, Your Honors. Good morning. Please support Mike Steadman on behalf of the appelees. Could you address the point opposing counsel made on equitable subrogation about which law applies here, common law of Maryland, restatement, and if restatement, which I presume you're going to say, how do you respond to Epona's point that the restatement doesn't really apply here because we don't have competing lien holders? If you could address that. I will, Your Honor, absolutely. First, clearly I'm going to argue that the Maryland law, as urged by Mr. Smith, does not apply. I also think he misinterprets the Maryland law, and I'll talk about that in a brief moment. But in both Bergoon, when that was the highest court for the state court equivalent in the District of Columbia and in Eastern Savings, reaffirming and embracing the logic in Bergoon, the Court of Appeals for the District of Columbia said they canvassed all the various interpretations of the equitable lien, equitable subrogation doctrines in this country and said very consciously we choose the most liberal approach of all of these. The sort of equitable assignee test embraced by Eastern Market was, and I can cite it in a brief, but where the rights of innocent third persons have not intervened, the release will not prevent the person making the payment from becoming an equitable assignee. In other words, it's a balancing of equities test like any other equitable lien question. So I would very much disagree with the idea that what the various plaintiffs sought below on behalf of HSBC Bank is the successor and interest to the deed of trust at issue. The notion that asking for the declaration of an equitable lien under these circumstances is unprecedented, just unprecedented. It is a bit, at least passing strange, that I know you don't have the kind of formal closing that we want today, but they let this thing close without having the signature of a joint tenant on the property. There can be no argument that had the settlement agent done everything they were supposed to do, we wouldn't be standing here today. It's absolutely true. And so that is why we're talking about an equity claim rather than something else, because the question becomes, under these circumstances, what should happen? Mr. Smith's the one who chose not to sign it, yet Mr. Smith's the one who's going to have to lose his interest if your position's correct. I disagree, and this is why. What the bankruptcy court below and the district court after that had no problem seeing, there is no dispute in this case that Mrs. Stevenson and Mr. Smith acquired the property in the first place with a purchase money loan in her name for which both of them signed a deed of trust. He was a grantor on that first deed of trust. I would argue a little clever by half in the briefing below, and here when they say Mr. Smith was never an obligor under the promissory notes, that's true, but there is no doubt that he did sign as a grantor on the purchase money deed of trust by which they got their property. There was a refinance loan some time later conducted by Wells Fargo. There's also no dispute at all that at that refinance loan, which paid off the first loan, Mr. Smith again signed as a co-grantor. Here on the third loan, the second refinance loan, again, my client's predecessor, Fremont, paid off the purchase money loan for which Mr. Smith had signed a deed of trust. It would be no different functionally if my client had come in and paid Wells Fargo directly to ask for an assignment. They would have gotten it. There would have been no questions asked. The only remaining issue as to any change in status for Mr. Smith here was addressed below, and the court said as a matter of equity, the only real difference between Mr. Smith being a grantor on that prior deed of trust and Mr. Smith being subject to the equitable lien imposed now would be a potential difference in interest rates, and so they consciously ordered below the same interest rate that the loan was subject to under the Wells Fargo lien. So in terms of where Mr. Smith is today, he's exactly where he was when he willingly signed the last deed of trust that was paid off, and again, there's no dispute at all in this case that my client's paid that off. There was talk about a rescission attempt by Ms. Stevenson. What's never really addressed in any of the briefing by the appellants in this case is that they took the money and they've never given it back. The reality is that $118,000 did go to pay off a loan that she did take out that Mr. Smith did co-sign for on a deed of trust, and that's just the fact of it. So to reach any conclusion other than that the lien attaches to the property is to conclude that at least Mr. Smith and possibly Ms. Stevenson would say no, but at least Mr. Smith gets the windfall of a payoff, a loan for which he had pledged an interest for no reason other than that a settlement agent clearly did something wrong, and there's no dispute that a mistake was made there. But again, what Burgoon and what Eastern Savings looked at and consciously embraced was a notion that where there was no just or equitable reason to punish that lender, then it shouldn't be punished. And here is a case where, again, Mr. Smith makes a number of arguments. But there's two approaches here, right, the majority approach and the restatement approach. That is true. That is certainly true and acknowledged. No, no, the majority approach you would lose. I don't know that we do, Your Honor, because in the majority approach, again, those cases don't deal necessarily with the fact pattern on the issues presented in this case. But the actual knowledge is the key distinction. The actual knowledge is an issue, but the actual knowledge in those sort of majority rule cases, again, pertains to intervening lien holders in circumstances where, again, intervening lien holders, and I would submit to this Court, as we did below, Mr. Smith analogizes himself to an intervening lien holder, but he's not really, right? Thank you, Solomon. Yes, the settlement company and, by default, the lender were certainly aware of Mr. Smith, but his interest was on record. As an owner subject to a purchase money loan for which he granted an interest, I don't think he falls in the same category as at least some of those majority rule cases. I would point out, and this circles back to your first question, Judge Griffith, the G.E. Levinson case relied upon by the appellants, the Maryland case, wholly factually distinguishable. That case does talk about actual knowledge, but it also talks about actual knowledge within the context of a judicially monitored foreclosure process in the state of Maryland. So you are saying that you would prevail even under the Maryland rule, is that correct? No, Your Honor. I'm saying that the case cited by the appellants doesn't address this issue. What I would also point out is, as to follow-up. So what would happen if the restatement were not out there and we were following the Maryland or majority rule? I don't know. I don't know the answer to that. Other than to say, again, that I don't know that this, I believe this case, under general equitable principles establishes that we are entitled to the relief branded below, I didn't want to circle around quickly to the Maryland question. Just on Mr. Smith's, your position treats Mr. Smith as if he had signed when he didn't sign. I suppose functionally with the caveat that Mr. Smith's status has been shaped carefully by court considering the equities, I would say subject to that caveat, that's true. What did the caveat mean? Well, again, the caveat meaning that the only, as I said before, the only real difference between where Mr. Smith was then and where he is now is that it's couched in terms of an equitable lien rather than a deed of trust interest because he had certainly promised without, there's no dispute that he promised Wells Fargo on that. Right, on that one, but that's not the one. I mean, you've termed it a windfall, but it seems like another way to look at it is getting the benefit of your bargain or lack thereof by not signing something and therefore not being obligated on it. I would assume your clients will hammer anyone who signs a document and force them to live up to their obligations. Since here someone does not sign a document and is still being forced to act as if he did sign the document. I agree that that is true, but again, Your Honor, I do think it would amount to a windfall for Mr. Smith. He did sign the original note. He signed the original deed of trust. But that note's been paid off. Yes, it has. By my client's bargain. Your client didn't get an obligation from Mr. Smith. They did not. No. But I'm not sure why it's equitable to impose the benefit of your bargain on somebody who didn't enter the bargain. Well, Your Honor, again, I can only go back to the... In balancing these equities, the reality of it is the money that was expended in a refinance loan by HSBC through its predecessor in interest did pay off the loan for which Mr. Smith had secured his... Why isn't it the case, as your opposing counsel has suggested on the brief, that you're a volunteer as to Mr. Smith? He didn't ask you to pay off his loan. You paid off his loan without him asking you to. We addressed that in the brief, Your Honor, and I think... I know it, but not very successfully, I think. Well, I'm sorry to hear that. Tell me again why you're not a volunteer as to Mr. Smith's obligation. Well... You addressed it in the brief. Try again. Again, Your Honor, because certainly it would sort of defy logic to think that a lender would go out and expend $118,000 in a refinance loan. Except that we know they did. We know they did, and we know that it was an error. They did it without him signing the document, and it appears from the record they knew he did it. Why do you say it was an error? He was there, he spoke up, they heard him, and said... To be clear, I'm not suggesting that there was... You call it a mistake, but why it was a mistake from your vantage point wasn't a mistake from his vantage point. It was a hard bargain, and he won. Are we in the business of fixing up bad negotiating strategies by banks? Well, I don't know that I would characterize it thusly, Your Honor. There was a settlement agent in the room, certainly not Fremont Bank, and yes, that settlement agent very clearly did make a mistake. You used the word agent. You used the word agent, and that is correct. But Fremont was in that room through that agent. Yes, Your Honor. I understand that point. I did want to circle on very briefly to the question about the Maryland Common Law. The consideration for what they did in paying off was the interest, Ms. Stevenson's interest. I mean, that's the problem. They assumed something was going to happen that didn't end up happening, right? That the Mr. Smith's interest was going to be transferred. I think that was the assumption, at least the briefs and the submissions below portray it. That didn't end up happening. And then the question is whether the document is treated as if he signed it when he didn't sign it. I'm saying the same thing, and you've responded to it, but it just strikes me that if the positions were reversed here, there would be no mercy. Well, Your Honor, in part I suppose I'd respond to that by pointing out that I realize I'm going well over my time. That's fine. I apologize. No, no, we're asking you questions. The red light only works for you. It doesn't work for us. Very good. Thank you, Your Honor. I think that was a reality wrestled with by the courts below when they did strike our first claim, the first count of the two-count complaint address, sort of an attempt to reform the deed of trust to include Mr. Smith's signature. And that's, again, why the count survived was the equity count. The court looked at it and said he didn't sign it. There's no excuse to that. We can't compel him to sign it. But looking at these tests as laid out in the governing case law in the district, we think the equities favor the imposition of a lien under the set conditions included in the order. And why do you think the D.C. Court of Appeals would follow the restatement rule and not the Maryland common law? Two reasons. One, because the D.C. Court of Appeals has made clear in each of the two governing cases that the most liberal of the possible standards is the one embraced in this jurisdiction. The second is the Maryland case law. Well, they haven't addressed this issue specifically. Not this specific issue, no. But as a doctrine, they've said they brought us to the possible test. Should we send it to them and have them tell us what they would do? Or is it so clear what they would do in your mind? I think the latter, Your Honor. I think that the imposition of a lien under these circumstances was clear, yes. But the second point I'd mention is that the G.E.B. Levinson case, which I've already attempted to distinguish in any event, is a case that was rendered well into the late 20th century. The notion that D.C. follows Maryland common law is true up until the incorporation of the District of Columbia because the common law was carved out of Maryland. G.E.B. Levinson is obviously a case well after the charter for D.C. And so it's not binding in the extent it could be viewed as persuasive. I point out again that it is contrary, at least in tone and, I think, broad brushstrokes, contradicted by Eastern markets. Okay, great. Thank you very much. Thank you, Your Honor. Mr. Smith, two minutes to rebut. Nothing new, just rebuttal for what you heard. With respect to the plaintiff's issue with regard to controlling precedence here in the District of Columbia, they point to Burgoon and the quote-unquote liberal approach. The Burgoon court in that decision warned against extending the liberal approach too much. Quote, for while the liberalization of the law by equity was and is necessary and wholesome, it is not to be gainsaid that it is the price of uncertainty of decision which should be extended with great caution. Moreover, the relief from their folly of those who in respect of contemplated property transactions do not consult available lien records seem more the task of school than of the court. There, it suggests that the Burgoon court would, in this day and age, follow the Maryland approach, which states that actual knowledge would bar the application. The plaintiffs point to the equities here. The equities aren't the only points that they have to make to establish equitable subrogation here. They have to, first of all, show that there are competing liens on the property, which it's not. The defendants aren't requesting a windfall here. What the defendants are saying is that the equities do not favor the plaintiffs here. Even in the Washington Supreme Court case in Ken V. Lee, the jurisdiction which the plaintiffs rely on, the court there said that the insurance company should not be relieved from their obligation, contractual obligation. We think that that should control the issue here. Thank you, Your Honor. Thank you very much. The case is submitted.
judges: Griffith, Kavanaugh, Sentelle